

FILED
FEB 1 2 2013
DAVID CREWS, CLERK
BY_____ Deputy

IN THE CIRCUIT COURT OF MONROE COUNTY
STATE OF MISSISSIPPI

JOHNNY CHENEY                              PLAINTIFF

VS.                                            CAUSE NO. 2012-318-PFM

1:13CV28-DS

REMINGTON ARMS COMPANY, INC.,
REMINGTON ARMS COMPANY, LLC,
FREEDOM GROUP, INC., CERBERUS
CAPITAL MANAGEMENT, L.P., SPORTING
GOODS PROPERTIES, INC., and E. I.
DuPONT DE NEMOURS AND COMPANY              DEFENDANTS

## COMPLAINT

**COMES NOW** the Plaintiff, Johnny Cheney, by and through counsel, and files this Complaint against the Defendants, Remington Arms Company, Inc., Remington Arms Company, LLC, Freedom Group, Inc., Cerberus Capital Management, L.P., Sporting Goods Properties, Inc., and E. I. Dupont De Nemours and Company, and for cause would show unto this Court the following:

## JURISDICTION AND VENUE

I.

Jurisdiction and venue are proper within the Circuit Court of Monroe County, Mississippi because the incident which gives rise to this complaint occurred within Monroe County, Mississippi.

II.

The Plaintiff is an adult resident citizen of Lee County, Mississippi residing at 136 CR 1640, Tupelo, MS 38804.

III.

The Defendant, Remington Arms Company, Inc., (hereinafter "Remington Inc.") is a

42751.WPD

Delaware Corporation not licensed to do business in the State of Mississippi so service should be made at its corporate office at 870 Remington Drive, Madison, NC 27025 or upon the Mississippi Secretary of State pursuant to Rule 4(d)(4) of the Mississippi Rules of Civil Procedure.

IV.

The Defendant, Remington Arms Company, LLC, (hereinafter "Remington LLC") is a Delaware Corporation not licensed to do business in the State of Mississippi so service should be made at its corporate office at 870 Remington Drive, Madison, NC 27025 or upon the Mississippi Secretary of State pursuant to Rule 4(d)(4) of the Mississippi Rules of Civil Procedure.

V.

The Defendant, Freedom Group, Inc., (hereinafter "Freedom Group") is a Delaware Corporation not licensed to do business in the State of Mississippi so service should be made at its corporate office at 870 Remington Drive, Madison, NC 27025 or upon the Mississippi Secretary of State pursuant to Rule 4(d)(4) of the Mississippi Rules of Civil Procedure.

VI.

The Defendant, Cerberus Capital Management, L.P., (hereinafter "Cerberus") is a Delaware Corporation not licensed to do business in the State of Mississippi so service should be made at its corporate office at CT Corporation System, 111 Eighth Street, New York, New York 10011 or upon the Mississippi Secretary of State pursuant to Rule 4(d)(4) of the Mississippi Rules of Civil Procedure.

VII.

The Defendant, Sporting Goods Properties, Inc., (hereinafter "SGPI") is a Delaware Corporation not licensed to do business in the State of Mississippi so service should be made at its

42751.WPD

corporate office at 1007 Market Street, D-13039, Wilmington, Delaware 19898 or upon the Mississippi Secretary of State pursuant to Rule 4(d)(4) of the Mississippi Rules of Civil Procedure.

VIII.

The Defendant, E.I. DuPont De Nemours and Company, (hereinafter "DuPont") is a Delaware Corporation licensed to do business in the State of Mississippi so service should be made to its registered agent for service of process, CT Corporation System 645 Lakeland East Drive, STE 101, Flowood, Mississippi 39232.

## FACTS

IX.

The Defendants were and/or are now engaged in the business of designing, manufacturing, assembling, distributing and selling firearms, and in this regard did design, manufacture, distribute, sell and place into the stream of commerce, the Remington Model 700 bolt action rifle including the action, fire control system, and safety, bearing Serial No. E6638185 (hereinafter "rifle"), knowing and expecting that said rifle would be used by consumers and around members of the general public.

X.

Prior to November 30, 1993, DuPont owned 100% of the stock in the company known as Remington Arms Company, Inc. On or about November 30, 1993, Remington Arms Acquisition Corporation, Inc. (RACI) purchased from DuPont substantially all of the income producing assets of Remington Arms Company, Inc, including the corporate name. The company formerly known as Remington Arms Company, Inc. changed its name to Sporting Goods Properties, Inc. (SGPI), and RACI changed its name to Remington Arms Company, Inc. SGPI retained certain non-income producing assets, some with significant envioronmental and other liabilities such that its net worth was reduced to a small fraction of its former value so that SGPI may not be able to pay reasonable

42751.WPD

judgments in this and similar litigation.

XI.

At all times pertinent to this action Defendants, SGPI and DuPont were and are the alter ego of each other and in essence constitute one legal entity in which SGPI operates as a division of DuPont. The separate incorporation of SGPI is a sham in that it is merely a corporate veil, which insulates DuPont from liability for products manufactured and sold by SGPI. DuPont exerted, and currently exerts extreme influence, complete dominion and/or absolute control over the corporate activity and function of SGPI. DuPont's continued operation of SGPI as a separate legal entity is a subterfuge designed to defeat public convenience, justify a wrong, perpetrate a fraud and/or otherwise work an injustice on the Plaintiff herein and the general public. The conduct of DuPont and/or SGPI has harmed or will harm Plaintiff and the general public, justifying piercing of the corporate veil resulting in DuPont being liable for the acts and omissions of SGPI as they are in reality one legal entity.

XII.

Defendant, Cerberus Capital Management, L.P. (Cerberus) formed the holding company of Freedom Group for its firearm acquisitions, including Remington Inc. and/or Remington LLC. Defendants, Remington Arms Company, LLC (Remington LLC) and/or Remington Arms Company, Inc. (Remington Inc.), were acquired by Defendants, Freedom Group and Cerberus. Freedom Group is a firearms manufacturing holding company which acquired Remington Inc. and/or Remington LLC and is wholly owned by Cerberus Capital Management, L.P. (Cerberus).

XIII.

At all times pertinent to this action Defendants, Freedom Group and Cerberus were and are the alter ego of each other and in essence constitute one legal entity in which Freedom Group

42751.WPD

operates as a division of Cerberus. The separate incorporation of Freedom Group is a sham in that it is merely a corporate veil, which insulates Cerberus from liability for products manufactured and sold by Freedom Group. Cerberus exerted, and currently exerts extreme influence, complete dominion and/or absolute control over the corporate activity and function of Freedom Group. Cerberus' continued operation of Freedom Group as a separate legal entity is a subterfuge designed to defeat public convenience, justify a wrong, perpetrate a fraud and/or otherwise work an injustice on the Plaintiff herein and the general public. The conduct of Cerberus and/or Freedom Group has harmed or will harm Plaintiff and the general public, justifying piercing of the corporate veil resulting in Cerberus being liable for the acts and omissions of Freedom Group as they are in reality one legal entity.

XIV.

All Defendants are so intertwined contractually for the liabilities, past, present and future, of each other that they are, in fact, one entity and therefore, the corporate veils of each company should be pierced to properly ascertain the responsible parties for the allegations contained herein. The various revised or suppemental purchases, agreements, etc. spreads responsibility and authority for product liability claims among all Defendants as it is unclear who bears the contractual or actual liability for this claim.

XV.

All Defendants expressly and impliedly agreed to assume certain debts and responsibilities based on prior actions, prior purchase agreements as well as continuing relationships involved. Consequently, Remington Inc., Remington LLC, DuPont and SGPI are the corporate successors to the product liability claims asserted, now and in the future, against Freedom Group and Cerberus, including this particular lawsuit.

42751.WPD

XVI.

Remington Inc. and/or Remington LLC continues in the design, manufacture, distribution and sale of all Remington Arms product lines including the Remington Model 700 bolt action rifle, without any significant changes. Remington maintains the same plants, employees, organization, contracts, customers, suppliers, advertising, products and name acquired over the years by each of the various Defendants.

XVII.

All Defendants have acted fraudulently with respect to the asset sales and purchases and the sale, purchase and formation of the entities to avoid and/or limit their responsibility for the Remington products and resulting product liability claims.

XVIII.

At all times pertinent to this action, SGPI was an agent of DuPont, acting in the course and scope of its agency relationship thereby making its principal, DuPont, liable for all of SGPI's acts and omissions, either by exercising direct control over SGPI, or by adopting and ratifying SGPI's acts or omissions. At all times pertinent to this action, agents of DuPont, acting within the course and scope of their agency relationship, controlled SGPI, thereby making SGPI's acts and omissions those of their principal, DuPont, either by exercising direct control over SGPI, or by adopting and ratifying SGPI's acts or omissions.

XIX.

At all times pertinent to this action, Freedom Group was an agent of Cerberus, acting in the course and scope of its agency relationship thereby making its principal, Cerberus, liable for all of Freedom Group's acts and omissions, either by exercising direct control over Freedom Group, or by adopting and ratifying Freedom Group's acts or omissions. At all times pertinent to this action,

42751.WPD

agents of Cerberus, acting within the course and scope of their agency relationship, controlled Freedom Group, thereby making Freedom Group's acts and omissions those of their principal, Cerberus, either by exercising direct control over Freedom Group, or by adopting and ratifying Freedom Group's acts or omissions.

## XX.

On Sunday, December 18, 2011, the Plaintiff, Johnny Cheney, was deer hunting with his son, Jonathan Cheney, on the Renfroe place on Highway 8 in Monroe County, Mississippi. Johnny was leaving the morning hunt at approximately 9:00 a.m. in anticipation of attending church services. Upon approaching his vehicle, Johnny was carrying his rifle (Remington Model 700 Rifle, 30-06 Caliber, Serial No. E6638185) using a sling over his right shoulder. He removed the rifle from his shoulder and attempted to unload the gun. He moved his left hand under the magazine and moved his right to the bolt of the gun. Upon firmly grabbing the bolt of the gun, the gun discharged without Johnny touching the trigger. The bullet went through his great toe on his right foot.

## XXI.

Plaintiff Johnny Cheney has experienced multiple surgeries and may have to incur additional surgeries. Plaintiff Johnny Cheney is bringing this action to recover damages from Defendants arising from Plaintiff's personal injuries caused by this incident. Plaintiff Johnny Cheney's damages include past and future medical and related expenses, past and future mental and physical pain and suffering, loss of earnings, loss of earning capacity, permanent disability, disfigurement and other general and special damages in an amount to be determined by the jury at trial of this action.

## THEORIES OF LIABILITY

## STRICT LIABILITY

## XXII.

42751.WPD

Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs I. through XXI. of the Complaint as though actually set forth herein.

XXIII.

The Remington Model 700 bolt action rifle, as designed, manufactured, sold and distributed by Defendants was in a defective condition, unreasonably dangerous to the user, consumer or bystander, their property and the public in general.

XXIV.

Plaintiff Johnny Cheney used the rifle in a reasonably foreseeable manner.

XXV.

The rifle as designed, manufactured, sold and distributed by Defendants was in substantially the same condition as when it was manufactured by Defendants.

XXVI.

The rifle was defective and unreasonably dangerous when it was sold by Defendants and at the time it left their possession and control.

XXVII.

Plaintiff Johnny Cheney was injured as a direct and proximate result of the defective design, manufacture, sale and distribution of the rifle.

XXVIII.

Plaintiff has suffered and is entitled to recover damages from Defendants as a direct and proximate result of the defective design, manufacture, sale and distribution of the rifle.

XXIX.

Defendants' conduct in the design, manufacture, sale and distribution of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a

42751.WPD

complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## STRICT LIABILITY FAILURE TO WARN

### XXX.

Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs I. through XXIX. of the Complaint as though actually set forth herein.

### XXXI.

The Remington Model 700 bolt action rifle was in a defective and unreasonably dangerous condition because of the failure to warn of its propensity to unexpectedly discharge without pulling the trigger and the failure to properly instruct about its care and maintenance.

### XXXII.

Plaintiff had no knowledge of said defective conditions present in the rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge that injured Johnny Cheney.

### XXXIII.

As a direct and proximate result of the failure to warn of the rifle's propensity to unexpectedly discharge without pulling the trigger and failure to properly instruct about its care and maintenance, Plaintiff has suffered and is entitled to recover damages from Defendants.

### XXXIV.

Defendants' conduct in the design, manufacture, sale, distribution and failure to warn of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety for users and consumers of the rifle and the general public, justifying punitive or exemplary

42751.WPD

damages.

## NEGLIGENT DESIGN AND MANUFACTURE

### XXXV.

Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs I. through XXXIV. of the Complaint as though actually set forth herein.

### XXXVI.

Defendants negligently designed, manufactured, sold and distributed the Remington Model 700 bolt action rifle in its defective and unreasonably dangerous condition.

### XXXVII.

As a direct and proximate result of Defendants' negligent design, manufacture, sale and distribution of the rifle, Plaintiff has suffered and is entitled to recover damages from Defendants.

### XXXVIII.

Defendants' conduct in the design, manufacture, sale and distribution of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

## NEGLIGENT FAILURE TO WARN

### XXXIX.

Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs I. through XXXVIII. of the Complaint as though actually set forth herein.

### XL.

Defendants negligently failed to warn of the Remington Model 700 bolt action rifle's

42751.WPD

propensity to discharge unexpectedly without pulling the trigger and failed to properly instruct about its care and maintenance.

XLI.

Plaintiff had no knowledge of said defective conditions present in the rifle and had no reason to suspect it was unreasonably dangerous prior to the inadvertent discharge, which injured Johnny Cheney.

XLII.

As a direct and proximate result of Defendants' negligent failure to warn of the rifle's propensity to unexpectedly discharge and failure to properly instruct about its care and maintenance, Plaintiff has suffered and is entitled to recover damages from Defendants.

XLIII.

Defendants' conduct in the design, manufacture, sale, distribution and failure to warn of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety for users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

**BREACH OF WARRANTY**

XLIV.

Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs I. through XLIII. of the Complaint as though actually set forth herein.

XLV.

Defendants expressly and impliedly warranted to Plaintiff and the public that the Remington Model 700 bolt action rifle was of merchantable quality, fit, safe and proper for the

42751.WPD


ordinary purposes for which it was intended.

### XLVI.

Plaintiff reasonably relied upon said express and implied warranties made by Defendants.

### XLVII.

Defendants did not warn or give notice to Plaintiff or the public in any manner that the design and manufacture of the Model 700 bolt action rifle was such that it was susceptible to unexpected discharges, without pulling the trigger, nor did Defendants properly instruct on the care and maintenance of the rifle.

### XLVIII.

Defendants breached said expressed and implied warranties in that the rifle was not fit and suitable for its intended purpose, nor was it of merchantable quality.

### XLIX.

As a direct and proximate result of the Defendants' breaches of warranty, Plaintiff has suffered and is entitled to recover damages from Defendants.

### L.

Defendants' conduct in the design, manufacture, sale and distribution of the Remington Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety for users and consumers of the rifle and the general public, justifying punitive or exemplary damages.

### **FAILURE TO RECALL OR RETROFIT**

### LI.

Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs I. through L. of the Complaint as though actually set forth herein.

42751.WPD

LII.

Defendants knew, or should have known, in the exercise of ordinary care or diligence of the defects in the fire control system and safety of the Remington Model 700 bolt action rifle but tool no action to warn, recall, retrofit, repair and/or otherwise remedy the unreasonably dangerous condition of the rifle and/or make it reasonably safe for its ordinary and intended use.

LIII.

As a direct and proximate result of the Defendants' failure to recall or retrofit, Plaintiff has suffered and is entitled to recover damages from Defendants.

LIV.

The defect in the Remington Model 700 bolt action rifle was substantial, obvious, notorious and known to Defendants to the extent that their conduct in the design, manufacture, sale and distribution of the Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive and exemplary damages.

## NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

LV.

Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs I. through LIV. of the Complaint as though actually set forth herein.

LVI.

Defendants negligently and/or intentionally inflicted serious and severe emotional pain, suffering, grief and distress on Plaintiff by: their design, manufacture, sale and distribution of the Remington Model 700 bolt action rifle; their failure to warn that the rifle was susceptible to

42751.WPD

unexpected discharges without a trigger pull; their failure to properly instruct in the care and maintenance of the rifle; and by Defendants' failure to recall or retrofit the Model 700 bolt action rifle.

### LVII.

The defect in the Remington Model 700 bolt action rifle was substantial, obvious, notorious and known to Defendants to the extent that their conduct in the design, manufacture, sale, distribution, failure to warn and failure to recall or retrofit the Model 700 bolt action rifle was outrageous, done with actual knowledge and malice, exhibiting a complete indifference or conscious disregard for the rights and safety of users and consumers of the rifle and the general public, justifying punitive and exemplary damages.

## SPOLIATION OF EVIDENCE

### LVIII.

Plaintiff incorporates herein by reference each and every allegation contained in Paragraphs I. through LVII. of the Complaint as though actually set forth herein.

### LIX.

Defendants knew that various items of evidence including but not limited to customer complaints, gun examination reports, committee minutes, internal memoranda, and fire control systems removed from returned rifles would be relevant and probative, albeit damaging, in litigation regarding whether or not the Remington Model 700 bolt action rifle is defective and unreasonably dangerous.

### LX.

Defendants had a duty to preserve said evidence for use in litigation so that a fair and just resolution of the issues can be reached with all relevant evidence.

42751.WPD

## LXI.

Defendants breached its duty owed to Plaintiff in this litigation, as well as to other past and future Plaintiffs with similar claims, by destroying relevant evidence including, but not limited to that evidence set forth above.

## LXII.

Defendants first destroyed incriminating evidence with full knowledge of past, pending and future claims regarding the Remington Model 700 so as to prevent Plaintiffs in this and other similar litigation from obtaining access to same.

## LXIII.

Defendants next adopted a written Record Retention Policy upon which it relied to destroy incriminating evidence based upon its stated destruction schedule with full knowledge that said evidence was relevant to past, pending and future Remington Model 700 claims.

## LXIV.

Defendants even destroyed relevant evidence in contravention of its stated Record Retention Policy because it knew that said evidence established that the Remington Model 700 is defective and that Defendants knew of said defects.

## LXV.

Defendants knew that if the evidence which has been destroyed was made available through the course of litigation discovery to Plaintiffs handling this and other similar Model 700 cases, the inability would be confirmed, and their exposure to both actual and punitive damages would be significantly greater.

## LXVI.

This destruction of relevant evidence occurred when legal proceedings regarding the

42751.WPD

Remington Model 700 were pending or reasonably foreseeable and after Defendants knew of the defective condition of the Model 700 and its liability for same.

## LXVII.

Defendants conduct in destroying evidence was done with actual knowledge in order to avoid liability for both actual and punitive damages.

## LXVIII.

Defendants conduct was reprehensible in that Defendants intended to: deny Plaintiff a fair and impartial trial with all relevant evidence; defraud this Court and its officers; continue the production of its defective Model 700 rifle; ignore the danger resulting from millions of Remington Model 700 rifles already in the hands of the general public; secure profits from their activities; and to generally deny justice to these Plaintiffs and others similarly situated.

## LXIX.

American jurisprudence through the common law provides redress for greivances in this Court in the form of either; monetary damages assessed against Defendants for the reduction in value of Plaintiff's claims or the increase in the cost of proving them as the result of the destruction of relevant evidence or equitable relief by striking Defendants pleadings, prohibiting their arguments or witnesses or resolving issues to which destroyed evidence would be probative in favor of the Plaintiff; or whatever other action the court deems just and proper.

## LXX.

Plaintiff seeks monetary damages or in the alternative whatever injunctive relief as the Court deems just and proper after review of the facts and the nature of evidence which has been destroyed.

42751.WPD

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff, Johnny Cheney, brings this Complaint and would respectfully pray for relief on this Court as follows:

1. For special and general damages against the Defendants, jointly and severally, in the amount of One Million Dollars ($1,000,000.00), or as determined by the jury at trial.

2. For punitive or exemplary damages against the Defendants in an amount of Twenty Million Dollars ($20,000,000.00), or as necessary to deter or prevent similar conduct in the future.

3. For attorneys fees and costs of litigation incurred in this action as permitted by law.

4. For interest from the date of the accident as permitted by law.

5. For such other further and additional relief as this Court deems just and proper.

### JURY TRIAL DEMANDED

That Plaintiff's causes of action be tried in this Court before a jury of his peers.

**RESPECTFULLY SUBMITTED,** this the 19th day of December, 2012.

JOHNNY CHENEY, Plaintiff

By: _____
JASON D. HERRING (MSB#99096)
MICHAEL S. CHAPMAN (MSB#103227)
Attorneys for Plaintiff

**LAW OFFICE OF JASON D. HERRING, PA**
342 North Broadway Street
Post Office Box 842
Tupelo, Mississippi 38802-0842
Telephone: (662) 842-1617
Fax: (662) 844-4999

FILED
DEC 21 2012
JUDY K. BUTLER
CIRCUIT CLERK
MONROE CO. MS
BY: _____

42751.WPD